UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Samantha M. A., | Case No. 22-cv-3119 (TNL) |
| Plaintiff, | |
| v. | **ORDER** |
| Martin J. O'Malley,<br>Commissioner of Social Security<br>Administration,[1] | |
| Defendant. | |

Edward C. Olson, Reitan Law Office, 80 South Eighth Street, Suite 900, Minneapolis, MN 55402 (for Plaintiff); and

Ana H. Voss, Assistant United States Attorney, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415; and Emily Carroll and James D. Sides, Special Assistant United States Attorneys, Social Security Administration, 6401 Security Boulevard, Baltimore, MD 21235 (for Defendant).

## I. INTRODUCTION

Plaintiff Samantha M. A. brings the present case, contesting Defendant Commissioner of the Social Security Administration's denial of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. The parties have consented to a final judgment from the undersigned United States Magistrate Judge in accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D. Minn. LR 72.1(c).

---

[1] Martin J. O'Malley was sworn into office as the Commissioner of the Social Security Administration on December 20, 2023. *Commissioner*, Soc. Sec. Admin., https://www.ssa.gov/agency/commissioner/ (last accessed Feb. 22, 2024). The Court has substituted O'Malley for former Acting Commissioner Kilolo Kijakazi. *See* Fed. R. Civ. P. 25(d) (public officer's successor "automatically substituted as a party").

1

This matter is before the Court on the parties' cross motions for summary judgment. ECF Nos. 11, 14. Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**; the Commissioner's motion is **GRANTED IN PART** and **DENIED IN PART**; and this matter is **REMANDED** for further proceedings.

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB asserting that she has been disabled since June 2019 due to, among other impairments, a herniated disc in her lower back and arthritis in her knees and back.[2] Tr. 115-16, 135-36.

Plaintiff's application was denied initially and again upon reconsideration. Tr. 13, 131, 134, 151, 154. Plaintiff appealed the reconsideration of her DIB determination by requesting a hearing before an administrative law judge ("ALJ"). Tr. 13, 171-72. The ALJ held two hearings in 2021, the first in March and the second in September. Tr. 13; *see generally* Tr. 43-66, 69-89. The ALJ subsequently issued an unfavorable decision. Tr. 13-33. Plaintiff requested review from the Appeals Council, which was denied. Tr. 1-3.

Plaintiff then filed the instant action, challenging the ALJ's decision. *See generally* Compl., ECF No. 1. The parties have filed cross motions for summary judgment. ECF Nos. 11, 14. This matter is now fully briefed and ready for a determination on the papers.

---

[2] Only Plaintiff's physical impairments are at issue here. Pl.'s Mem. at 3 n.1, ECF No. 12.

### III. ALJ'S DECISION

In relevant part, the ALJ found that Plaintiff had the severe impairments of lumbar degenerative disc disease, morbid obesity, degenerative joint disease of the knee, and "residuals of pneumonia," and that none of these impairments individually or in combination met or equaled a listed impairment in 20 C.F.R. pt. 404, subpt. P, app. 1. Tr. 16-17.

The ALJ found that Plaintiff had the residual functional capacity to perform sedentary work[3] with the following relevant limitations:

> occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasional balancing, occasional stooping, occasional kneeling, occasional crouching, and occasional crawling; no work at unprotected heights; no work near moving mechanical parts, the kind of moving machinery such that a loss of balance in proximity of that machinery would pose a severe safety hazard to life or limb; [and] no exposure to extremes in humidity and wetness.

Tr. 19. In reaching this residual-functional-capacity determination, the ALJ considered, among other things, the opinion of Karie Soost, P.A.C., Plaintiff's primary care provider, and found it to be unpersuasive. Tr. 30, 1592-96.

Based on Plaintiff's age, education, work experience, residual functional capacity, and the testimony of a vocational expert, the ALJ found that Plaintiff was capable of

---

[3]
> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

3

performing the representative jobs of optical goods polisher,[4] inspector of electronic components and accessories,[5] and laminator of leather products.[6]  Tr. 32.  Accordingly, the ALJ concluded that Plaintiff was not under a disability through December 31, 2020, the date she was last insured.  Tr. 32.

## IV. ANALYSIS

This Court's "task is to determine whether the ALJ's decision complies with the relevant legal standards and is supported by substantial evidence in the record as a whole."  *Lucus v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (quotation omitted); *accord Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law."  *Lucus*, 960 F.3d at 1068 (quotation omitted).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations."  *Biestek*, 139 S. Ct. at 1154 (quotation omitted).  "[T]he threshold for such evidentiary sufficiency is not high."  *Id.*; *accord Ross v. O'Malley*, 92 F.4th 775, 778 (8th Cir. 2024).  "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quotation omitted); *accord Ross*, 92 F.4th at 778; *see, e.g.*, *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018) (defining "substantial evidence as less than a preponderance but

---

[4] *Dictionary of Occupational Titles* ("DOT") 713.684-038.
[5] DOT 726.684-050.
[6] DOT 690.685-258.

4

enough that a reasonable mind would find it adequate to support the conclusion" (quotation omitted)).

This standard requires the Court to "consider both evidence that detracts from the [ALJ's] decision and evidence that supports it." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); *accord Ross*, 92 F.4th at 778; *see Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion other than that reached by the ALJ." *Boettcher*, 652 F.3d at 863; *accord Grindley*, 9 F.4th at 627; *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). "The court must affirm the [ALJ's] decision if it is supported by substantial evidence on the record as a whole." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (quotation omitted). Thus, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Perks*, 687 F.3d at 1091 (quotation omitted); *accord Chaney*, 812 F.3d at 676; *see also Kraus*, 988 F.3d at 1024 ("This Court will disturb the ALJ's decision only if it falls outside the available zone of choice. An ALJ's decision is not outside the zone of choice simply because this Court might have reached a different conclusion had we been the initial finder of fact." (quotations and citations omitted)).

Disability benefits are available to individuals who are determined to be under a disability. 42 U.S.C. § 423(a)(1); *accord* 20 C.F.R. § 404.315. An individual is considered to be disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

5

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). This standard is met when a severe physical or mental impairment, or impairments, renders the individual unable to do her previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1505(a).

Disability is determined according to a five-step, sequential evaluation process. 20 C.F.R. § 404.1520(a)(4).

> To determine disability, the ALJ follows the familiar five-step process, considering whether: (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). In general, the burden of proving the existence of disability lies with the claimant. 20 C.F.R. § 404.1512(a).

Plaintiff asserts that the ALJ erred by not evaluating Soost's opinion consistent with 20 C.F.R. § 404.1520c and that the testimony of the vocational expert was insufficient to meet the Commissioner's burden at step five.

**A. Evaluation of Soost's Opinion**

Soost completed a residual-functional capacity questionnaire. *See generally* Tr. 1592-96. In relevant part, Soost indicated that Plaintiff's medical impairments were shown by x-rays and identified symptoms experienced by Plaintiff. Tr. 1592. Among

6

other things, Soost opined that, as a result of her impairments, Plaintiff could sit for 20 to 30 minutes at a time and stand for 30 minutes at a time. Tr. 1594. Further, in an eight-hour workday, Plaintiff was capable of sitting for less than two hours total and standing/walking for less than two hours total. Tr. 1594. After summarizing Soost's opinion, the ALJ found that it was not persuasive. Tr. 30. The ALJ explained that "Soost's opinion is not consistent with the greater weight of the record, including objective findings and the claimant's course of care" and that "[t]he opinions of the state agency medical consultants are more persuasive and consistent with the record and [Plaintiff's] reports." Tr. 30.

When determining a claimant's residual functional capacity, an ALJ must consider all medical opinions submitted and evaluate them for persuasiveness. 20 C.F.R. § 404.1520c. The evaluation of opinion evidence is governed by the criteria set forth in 20 C.F.R. § 404.1520c. *See Austin v. Kijakazi*, 52 F.4th 723, 728 & n.2 (8th Cir. 2022) (noting "recently revised regulations" "apply to all claims filed on or after March 27, 2017"). Under the regulation, medical opinions are not entitled to special deference. *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022); *see* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.").

> Instead, ALJs evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors.

7

*Bowers*, 40 F.4th at 875; *accord Austin*, 52 F.4th at 728; *see generally* 20 C.F.R. § 404.1520c(c) (listing factors).

"The first two factors—supportability and consistency—are the most important." *Bowers*, 40 F.4th at 875; *accord Austin*, 52 F.4th at 723; *see* 20 C.F.R. § 404.1520c(a), (b)(2). With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). As for consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2). The ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical source's opinions in [the] . . . decision." *Id.* § 404.1520c(b)(2); *see, e.g.*, *Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (per curiam).

ALJs "may, but are not required to, explain how [they] considered" the other factors. 20 C.F.R. § 404.1520c(b)(2); *see Nolen v. Kijakazi*, 61 F.4th 575, 577 (8th Cir. 2023) ("Having considered the supportability and consistency of Dr. Diamond's opinion, the ALJ did not need to discuss other factors."). The ALJ is not required to explain the remaining factors unless the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. § 404.1520c(b)(2)-(3).

Plaintiff asserts that the ALJ erred when evaluating Soost's opinion by only considering the consistency factor and disregarding the other factors in contravention of 20 C.F.R. § 404.1520c. Plaintiff asserts that "[t]he ALJ's decision contains no discussion of where . . . Soost's opinion is lacking in support" and "fails to detail what, if any, consideration the ALJ gave to . . . Soost's examining and treating relationship with [her]."[7] Pl. Mem. at 12. Because the ALJ did not properly evaluate Soost's opinion, Plaintiff asserts that the residual-functional-capacity determination is not based on substantial evidence on the record as a whole, which in turn affected the hypothetical question posed to the vocational expert.

The Commissioner asserts that "[t]he regulations do not specifically require that the [ALJ's] evaluation use the terms 'supportability' and 'consistency.'" Comm'r Mem. at 5, ECF No. 15. According to the Commissioner, "[t]he ALJ's statement that . . . Soost's statement was 'not consistent with the greater weight of the record, including objective findings and the claimant's course of care' goes to supportability because . . . Soost was both Plaintiff's primary care provider and had available to her the records from specialists," and yet "Soost cited no findings from her records or anyone else's to support the limitations in her statement." Comm'r Mem. at 6. The Commissioner goes on to point to places in the record where, for example, Plaintiff had a normal physical examination, including a normal gait; a walking routine; and improvement in her

---

[7] In her reply, Plaintiff attacks the ALJ's analysis of the consistency factor as well. Pl. Reply at 2, ECF No. 16. The Court declines to address this argument. *See Dereschuk v. Berryhill*, 691 F. App'x 292, 294 n.3 (8th Cir. 2017) (per curiam) ("Absent some reason for failing to raise an issue in the opening brief, 'we will not consider an issue first raised in a reply brief.'" (quoting *United States v. Darden*, 70 F.3d 1507, 1549 n.18 (8th Cir. 1995), *cert. denied*, 517 U.S. 1149 (1996))).

9

symptoms with physical therapy. The Commissioner characterizes Soost's opinion as a "checkbox opinion," and asserts that the ALJ properly discounted it because it "included no supporting rationale." Comm'r Mem. in Supp. at 6.

Beginning with Plaintiff's complaint that the ALJ erred by not discussing the other factors contained in (c)(3) through (c)(5) when evaluating Soost's opinion, the ALJ was not required to do so. "Because the ALJ did not find that any two opinions were equally well supported, . . . the ALJ was not required to articulate how the[se] other factors were considered." *Michael B. v. Kijakazi*, No. 21-cv-1043 (NEB/LIB), 2022 WL 5119107, at *6 n.5 (D. Min. July 20, 2022), *report and recommendation accepted*, 2022 WL 4463901 (D. Minn. Sept. 26, 2022); *cf. Nolen*, 61 F.4th at 577. And, while the ALJ's decision may not have contained an express verbal recitation of all of § 404.1520c's factors, the ALJ in fact stated that "the medical opinion(s) . . . [were considered] in accordance with the requirements of 20 CFR 404.1520c," thereby acknowledging them. Tr. 19.

As for the ALJ's failure to address the supportability factor, however, the regulations require the ALJ to "explain how [he or she] considered the supportability and consistency factors for a medical source's opinions in [the] . . . decision." 20 C.F.R. § 404.1520c(b)(2). Failure to comply with the relevant regulations is legal error. *Lucus*, 960 F.3d at 1070; *see Bonnett*, 859 F. App'x at 20. And, courts in this District, the Eighth Circuit, and elsewhere have concluded that the failure to address or adequately explain either the supportability or consistency factors when evaluating the persuasiveness of a medical opinion warrants remand. *Bonnett*, 859 F. App'x at 20; *see Sara Z. v. Kijakazi*, No. 22-cv-226 (DSD/TNL), 2023 WL 5753627, at *29 (D. Minn.

10

July 31, 2023) (citing cases), *report and recommendation adopted*, 2023 WL 5624006 (D. Minn. Aug. 31, 2023). Here, it is not apparent how the ALJ evaluated the supportability of Soost's opinion as required by 20 C.F.R. § 404.1520c.

To be sure, "[n]o talismanic language is required for the ALJ to meet the requirements of § 404.1520c . . . ." *Mario O. v. Kijakazi*, No. 21-cv-2469 (NEB/ECW), 2022 WL 18157524, at *11 (D. Minn. Dec. 13, 2022), *report and recommendation accepted*, 2023 WL 136590 (D. Minn. Jan. 9, 2023); *see also Svendsen v. Kijakazi*, No. 1:21-CV-1029-CBK, 2022 WL 2753163, at *8 (D. S.D. July 14, 2022) ("The ALJ need not use the magic words of 'supportability' and 'consistency,' but it must be clear they were addressed."). But, the ALJ must explain how the supportability factor was considered in a manner that allows "a reviewing court . . . [to] make a meaningful assessment of a challenge to [the] ALJ's evaluation of the persuasiveness of . . . [the] medical opinion[]." *Hirner v. Saul*, No. 2:21-CV-38 SRW, 2022 WL 3153720, at *9 (E.D. Mo. Aug. 8, 2022); *see Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01, 5858 (Jan. 18, 2017) (20 C.F.R. § 404.1520c sets a "minimal level of articulation" so as "to provide sufficient rationale for a reviewing adjudicator or court").

Nor can the Court accept the Commissioner's argument that certain evidence in the record "goes to supportability." Comm'r Mem. at 6. Regardless of whether such evidence might constitute a basis for finding Soost's opinion to be unsupported, the Court cannot accept such *post hac* rationalization. *See Bonnett*, 859 F. App'x at 20 ("While the Commissioner argues that Dr. Thompson's opinion was not consistent with specific other

11

evidence in the record, we will not affirm on this basis, as the ALJ made no such findings."); *see also Oglala Sioux Tribe of Indians v. Andrus*, 603 F.2d 707, 715 n.7 (8th Cir. 1979) ("It is well established that an agency's action must be upheld, if at all, on the basis that was articulated by the agency itself, and that it cannot be sustained on the basis of post-hoc rationalizations of appellate counsel."). True, an ALJ may find less persuasive a medical opinion "rendered on a check-box and fill-in-the-blank form." *Swarthout v. Kijakazi*, 35 F.4th 608, 611 (8th Cir. 2022); *see also Nolen*, 61 F.4th at 577. But, it is not the role of this Court to speculate on the reasons that might have supported the ALJ's decision or supply a reasoned basis for that decision that the ALJ never gave. *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2127 (2016); *accord Nebraska v. U.S. Envtl. Prot. Agency*, 812 F.3d 662, 666 (8th Cir. 2016); *see Bonnett*, 859 F. App'x at 20; *see also Nat'l R.R. Passenger Corp. v. Boston & Maine Corp.*, 503 U.S. 407, 420 (1992) ("We recognize the well-established rule that an agency's action may not be upheld on grounds other than those relied on by the agency." (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943))).

On remand, the ALJ shall reconsider Soost's opinion. If the ALJ finds that Soost's opinion is unpersuasive, the ALJ shall articulate the reasons therefor, fully addressing the supportability and consistency factors as well as any other relevant factors, "so a reviewing court can make a meaningful assessment of a challenge to [the] ALJ's evaluation of the persuasiveness of . . . [the] medical opinion[ ]." *Hirner*, 2022 WL 3153720, at *9. If the reconsideration of Soost's opinion results in a modification of the residual functional capacity, the ALJ may pose a new hypothetical question to a

12

vocational expert containing "those impairments and limitations [the ALJ has] found to be supported by the evidence as a whole." *Nash v. Comm'r*, 907 F.3d 1086, 1090 (8th Cir. 2018); *see Kraus*, 988 F.3d at 1026 ("A vocational expert's testimony based on a properly phrased hypothetical question constitutes substantial evidence." (quotation omitted)).

### B. Vocational Expert's Testimony

At the first hearing,[8] the vocational expert testified that a hypothetical individual of Plaintiff's age, education, and work experience with the limitations contained in the residual functional capacity would not be capable of performing Plaintiff's past work as a home health aide. Tr. 62. When asked if "there would be any jobs in the economy such an individual could perform," the vocational expert testified that this hypothetical individual could perform the representative jobs of optical goods polisher, inspector of electronic components and accessories, and laminator of leather products. Tr. 62. For each of the jobs, the vocational expert testified to the number of jobs available *nationwide*. Tr. 62. The vocational expert testified that there were 30,000 polisher jobs, 180,000 inspector jobs, and 25,000 laminator jobs in the United States. Tr. 62. Based on the vocational expert's testimony, the ALJ found that work existed in significant numbers in the national economy that Plaintiff could perform and therefore she was not disabled. Tr. 32.

"The Commissioner bears the burden at the fifth step of establishing that, given the applicant's residual functional capacity, age, education, and work experience, there

---

[8] No additional vocational expert testimony was taken at the second hearing. Tr. 87-88.

are a significant number of jobs available in the national economy which the applicant can perform." *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005); *see Cox v. Apfel*, 160 F.3d 1203, 1207 (8th Cir. 1998) ("In the last step, the Commissioner has the burden to establish that jobs realistically suited to the claimant's residual functional capabilities are available in the national economy."); *see also Brett S. v. Saul*, No. 20-cv-1289 (LIB), 2021 WL 5087377, at *5 (D. Minn. Aug. 6, 2021). "An ALJ may rely on a vocational expert's response to a properly formulated hypothetical question to meet her burden of showing that jobs exist in significant numbers which a person with the claimant's residual functional capacity can perform." *Kraus*, 988 F.3d at 1026 (quotation omitted); *see Cox*, 160 F.3d at 1207 ("The Commissioner may produce evidence of suitable jobs by eliciting testimony from a vocational expert concerning availability of jobs which a person with the claimant's particular residual functional capacity can perform."). "If the Commissioner establishes that the claimant can perform other jobs that exist in significant numbers in the national economy, that burden is met." *Brett S.*, 2021 WL 5087377, at * 5.

"The phrase 'work which exists in the national economy' . . . is a term of art and its meaning is somewhat counterintuitive." *Karen E. v. Kijakazi*, No. 21-cv-3015 CJW-MAR, 2022 WL 17548642, at *5 (N.D. Ia. Sept. 15, 2022); *see also, e.g.*, *Shari B. v. Kijakazi*, No. 22-cv-1539 (DJF), 2023 WL 6130679, at *7 (D. Minn. Sept. 19, 2023). "Taken intuitively, 'work which exists in the national economy' means work existing across the nation with no focus on a specific region or regions." *Karen E.*, 2022 WL 17548642, at *5. In the disability context, however, "'work which exists in the national

economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). It is not limited to work in the immediate area where a claimant lives. *See* 42 U.S.C. § 423(d)(2)(A) ("regardless of whether such work exists in the immediate area in which he lives"); *Miller v. Finch*, 430 F.2d 321, 324 (8th Cir. 1970) ("[I]t is not necessary that a showing be made that jobs must exist in the immediate area where the claimant lives."); *Joshua G. v. Kijakazi*, No. 22-cv-91-LRR-MAR, 2023 WL 6279534, at *11 (N.D. Ia. July 26, 2023) ("The Eighth Circuit has ruled that work need not exist in the immediate area Plaintiff is located."), *appeal dismissed sub nom. Griffin v. O'Malley*, No. 23-3142 (8th Cir. Feb. 21, 2024). Additionally, the regulations provide that "isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the claimant] live[s] are not considered 'work which exists in the national economy.'" 20 C.F.R. § 404.1566(b). Accordingly, a claimant will not be denied benefits on the existence of such isolated jobs. *Id.*

Plaintiff asserts that there is no evidence regarding how many of the jobs identified by the vocational expert are available in Minnesota, the region where she lives, or "in 'several regions of the country.'" Pl. Mem. at 14. Plaintiff asserts that, as the burden is on the Commissioner at step five, "it is incumbent on the Commissioner to identify the 'regions of the country' where these jobs exist or identify how many of said jobs exist in the region where [she] lives." Pl. Mem. at 15. The Commissioner responds that the Eighth Circuit has held that the Commissioner's burden has been met by

15

identifying 10,000 jobs in the national economy, citing *Johnson v. Chater*, 108 F.3d 178 (8th Cir. 1997).

"The Eighth Circuit 'ultimately leave[s] to the trial judge's common sense the application of the significant numbers requirement to a particular claimant's factual situation.'" *Shari B.*, 2023 WL 6130679, at *8 (alteration in original) (quoting *Hall v. Chater*, 109 F.3d 1255, 1259 (8th Cir. 1997)); *see also Johnson*, 108 F.3d at 180.  As several courts have observed, there is a split among the district courts "within the Eighth Circuit on how to take this 'common sense' approach." *Shari B.*, 2023 WL 6130679, at *8; *see, e.g., Alice T. v. Kijakazi*, No. 8:21CV14, 2021 WL 5302141, at *16-17 (D. Neb. Nov. 15, 2021) (discussing split); *Hayden v. Saul*, No. 4:19-CV187-SPM, 2020 WL 888002, at *10-11 (E.D. Mo. Feb. 24, 2020) (same); *see also, e.g.*, *Karen E.*, 2022 WL 17548642, at *5-6 (N.D. Ia. Sept. 15, 2022); *Evert v. Kijakazi*, No. 3:21-cv-6, 2022 WL 1749611, at *6-7 (D. N.D. Feb. 17, 2022).

Consistent with the approach urged by Plaintiff, courts in the District of South Dakota "ha[ve] repeatedly held that [vocational expert] testimony solely concerning national numbers for DOT occupations is insufficient to carry the Commissioner's burden at step five of the sequential analysis; there must be direct evidence of a significant number of jobs either in the claimant's 'region' or in 'several regions.'" *Alice T.*, 2021 WL 5302141, at *16; *see also, e.g.*, *Born v. Kijakazi*, No. 3:21-CV-3010-MAM, 2022 WL 3139092, at *5 & n. 56 (D. S.D. Aug. 5, 2022); *Svendsen*, 2022 WL 2753163, at *16-17; *Melvin W. v. Kijakazi*, No. CIV. 20-5050-JLV, 2022 WL 540274, at *3-10 (D. S.D. Feb. 23, 2022).

Other courts, including those in the Eastern District of Missouri, District of Nebraska, and District of North Dakota have "taken a more pragmatic approach and held that 'evidence of jobs existing nationally does constitute evidence of work existing in several regions of the country, at least where there is nothing in the number of jobs or the nature of the jobs identified to indicate that those jobs would exist only in limited numbers in isolated regions of the country.'" *Alice T.*, 2021 WL 5302141, at *17 (quoting *Hayden*, 2020 WL 888002, at *10-12); *see, e.g., Evert*, 2022 WL 1749611, at *7; *see also McCall v. Saul*, 844 F. App'x 680, 681 (4th Cir. 2021); *cf. Joshua G.*, 2023 WL 6279534, at *11-13; *Karen E.*, 2022 WL 17548642, at *5-7. As noted in *Shari B.*, "[a]t least one court in th[is] District . . . has held that 20,500 jobs in the national economy constitutes a significant number." 2023 WL 6130679, at *8 (citing *Nicolas C. J. v. Kijakazi*, No. 20-cv-1340 (WMW/ECW), 2022 WL 1109810, at *25 (D. Minn. Jan. 20, 2022) (citing *Johnson*, 108 F.3d at 180), *report and recommendation adopted*, 2022 WL 807605 (D. Minn. Mar. 17, 2022)). *Shari B.* went on to point out that, "[b]ased on [its] survey of case law from across the country, many courts appear to draw the line between a 'significant' and an insignificant number of jobs in the national economy—without evidence of the number of jobs available locally—at around 20,000 jobs." *Id.* (citing cases).

Again, the Eighth Circuit has emphasized a commonsense approach with respect to the significant-numbers requirement. *See, e.g.*, *Hall*, 109 F.3d at 1259; *Johnson*, 108 F.3d at 179. To that end, this Court need not and does not express an opinion on whether

17

*Johnson* stands for the proposition that 10,000 jobs nationwide is the floor.[9] Plaintiff does not contend that the jobs identified exceed the residual functional capacity determined by the ALJ, challenge the national figures the vocational expert testified to, or claim that the jobs themselves represent the sort of impermissible isolated jobs contemplated by 20 C.F.R. § 404.1566(b); *cf. Milhem v. Kijakazi*, 52 F.4th 688, 695 (7th Cir. 2022) ("[W]ork that exists 'in very limited numbers' cannot be considered 'significant.'"). In total, the vocational expert testified that there were close to a *quarter of a million*—235,000—jobs available. This number far exceeds national numbers of jobs held by other circuit appellate courts to be sufficient to meet the Commissioner's burden at step five. *See, e.g.*, *Milhelm*, 52 F.4th at 696-97 (89,000 jobs nationally); *Moats v. Commissioner of Social Security*, 42 F.4th 558, 563 (6th Cir. 2022) (32,000 jobs nationally); *McCall*, 844 F. App'x at 681-82 (81,000 jobs nationally); *see also Gutierrez v. Comm'r of Soc. Security*, 740 F.3d 519, 529 (9th Cir. 2014) ("A finding of 25,000 jobs likely does not fall into the category of 'isolated jobs' existing in 'very limited numbers.'"); *cf. Jones ex rel. Morris v. Barnhart*, 815 F.3d 974, 979 (8th Cir. 2003) (75,000 jobs nationally); *Weiler v. Apfel*, 179 F.3d 1107, 1110-11 (8th Cir. 1997) (32,000 jobs nationally).

Like other courts, this Court agrees "it would have been preferable for the ALJ to elicit testimony from the [vocational expert] regarding regional numbers." *Alice T.*, 2021

---

[9] As stated in *Shari B.*, "*Johnson* is clearly predicated in part on the 200 local jobs identified and the fact that the jobs and figures identified 'were merely representative of a larger category of jobs that [the plaintiff] could perform[.]'" 2023 WL 6130679, at *8 n.5 (alteration in original) (quoting 108 F.3d at 180). *Johnson* also found significant the fact that "[a]t the time of the hearing before the ALJ, [the claimant] was engaged in one of the sedentary jobs that the vocational expert said she was capable of performing." 108 F.3d at 180 (footnote omitted).

WL 5302141, at *17; *see also, e.g., Evert*, 2022 WL 1749611, at *7; *Hayden*, 2020 WL 888002, at *12. Nevertheless, considering the Eighth Circuit's approach to the significant-numbers requirement and the fact that substantial evidence is "relevant evidence . . . a reasonable mind might accept as adequate to support a conclusion," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); *accord Ross*, 92 F.4th at 778; *see also Chismarich*, 888 F.3d at 979, the Court concludes the vocational expert's testimony that there are 235,000 jobs nationwide in response to the ALJ's hypothetical constitutes substantial evidence to support the conclusion that there are a significant number of jobs in the national economy which Plaintiff can perform. *See Milhelm*, 52 F.4th at 696-97; *Moats*, 42 F.4th at 563; *McCall*, 844 F. App'x at 681-82; *Joshua G.*, 2023 WL 6279534, at *12; *Evert*, 2022 WL 1749611, at *7; *Alice T.*, 2021 WL 5302141, at *17; *Hayden*, 2020 WL 888002, at *11-12; *cf. Jones*, 815 F.3d at 979; *Weiler*, 179 F.3d at 1110-11.

[Continued on next page.]

# V. ORDER

Based upon the record, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, ECF No. 11, is **GRANTED IN PART** and **DENIED IN PART**.

2. The Commissioner's Motion for Summary Judgment, ECF No. 14, is **GRANTED IN PART** and **DENIED IN PART**.

3. This matter is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February  28 , 2024

              *s/ Tony N. Leung*
              Tony N. Leung
              United States Magistrate Judge
              District of Minnesota

              *Samantha M. A. v. O'Malley*
              Case No. 22-cv-3119 (TNL)